IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BONNIE M. MCGRIFF,

      Plaintiff,

    v.

BEAVERCREEK CITY SCHOOL
DISTRICT,

      Defendant.

:

:

:

:

Case No. 3:18-cv-372

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #26); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Plaintiff, Bonnie M. McGriff ("McGriff" or "Plaintiff"), is a teacher at

Beavercreek High School in Beavercreek, Ohio. She has filed an Amended

Complaint ("Complaint"), naming as Defendant her employer, Beavercreek City

School District ("School District" or "Defendant"). Doc. #7. She alleges two

causes of action: age discrimination under the Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. § 621, et seq.; and disability discrimination under the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

This matter is before the Court pursuant to a Motion for Summary

Judgment ("Motion") filed by Defendant. Doc. #26. The Motion argues that based

on the deposition of McGriff, Doc. #23, her affidavit, Doc. #34, PageID##788-790,

the affidavits of Defendant's Director of Human Resources, Deron Schwieterman

("Schwieterman"), Doc. #25, and its Superintendent, Paul Otten ("Otten"), Doc. #24, there is no genuine issue of a material fact and Defendant is entitled to judgment as a matter of law. McGriff has filed a Response, including her affidavit, Doc. #34, and Defendant has filed a Reply. Doc. #36.

For the reasons set forth below, Defendant's Motion is sustained.

## I. Background Facts

McGriff is a 56-year old teacher and Department Chair in the World Language Department at Beavercreek High School. She has been employed by Defendant since July 1996. Doc. #23, PageID##157-159; 161-162. She has a bachelor of science degree in secondary education for Spanish and French and a master's degree in educational leadership from Wright State University. *Id.*, at PageID##157-158. Plaintiff also has a permanent teaching certificate in Spanish and French for grades six through twelve and is the only teacher in the department licensed to teach both languages. *Id.*, PageID#157-158 and 194. Because of this permanent teaching certificate, which is no longer offered in Ohio, she has no requirement to continue to maintain skills in either Spanish or French. Doc. #23, PageID#201. With the exception of teaching one French I class after her third or fourth year at Beavercreek High School, McGriff has always taught Spanish classes from her first school year term in 1996-1997 through the 2016-2017 school year. *Id.*, PageID##-171-173.

2

World Language courses are taught in the School District at Beavercreek High School, Ferguson Hall Freshman School ("Ferguson Hall") and in the middle schools. Doc. #25, PageID#410. Students register online in late winter and early spring. After the registration process is completed, the School District's Human Resources Director, Schweiterman, works with the principals and counselors to determine how best to staff for the upcoming school year. Doc. #24, PageID#404; Doc. #25, PageID#408.

Before her employment with the School District, Plaintiff taught introductory and Level I French and Spanish to seventh and eighth grade students for nine years at a middle school in the Northridge Local School District ("Northridge") in Dayton, Ohio. Doc. #23, PageID#157-158. In 1994, when Plaintiff was approximately 30 years old and teaching middle school at Northridge, she began to notice a hearing loss. Doc. 23, PageID##231 and 240. She was diagnosed with a mild to moderate sensori-neural loss between certain kilohertz ranges. *Id.*, PageID#239. As a result, she wears hearing aids in both ears. Even with hearing aids, however, McGriff has difficulty understanding speech if a person is not facing her or when she is using the telephone. Doc. #34, PageID#788. Noisy backgrounds also hinder her ability to comprehend language. *Id.*, PageID#789. Because of her hearing difficulty, she misses words and needs to ask others to repeat what they just said. *Id.* She also uses closed captions when watching videos or in a virtual meeting. *Id.* at 788.

3

When McGriff first began wearing hearing aids at Northridge, they helped her to hear better when she was teaching French, although she still experienced difficulty teaching it to her students in the classroom. *Id.*, at PageID#237. She did not, however, experience these difficulties when teaching Spanish because, unlike French, it is "very phonetic" and "has five pure vowel sounds." *Id.*, PageID#236. Plaintiff's motivation to teach at Beavercreek High School was, in part, due to an opening to teach Spanish in the World Language Department. *Id.*, PageID208.

McGriff did not tell Defendant when she was hired that she had difficulty hearing while wearing her hearing aids. Later, in 2012, she did tell Schweiterman, the Director of Human Resources, about her hearing difficulties. This occurred because a question had arisen during an investigation concerning how close she was standing to a department member. McGriff told Schweiterman that due to noises from a copier, printer and background conversations, she needed to step closer to the department member so she could make sure she was understanding what he was saying. Doc. #23, PageID#233. She also told her supervising and assistant principal and principal at the high school that she wore hearing aids and included the information on her emergency medical form. McGriff shared her "invisible disability" with other teachers in the World Language Department, her students and their parents. *Id.*, PageID#234. She never requested an "official" accommodation from Defendant for her hearing loss. *Id.*, PageID#235.

At approximately the same time that Plaintiff began to experience a hearing loss, she was also diagnosed with fibromyalgia. Doc. #23, PageID#240. This

4

condition causes her "chronic pain" in the neck, shoulders and back. Doc. #34, PageID#789. Although the pain is daily, it varies in severity and causes fatigue. *Id.* As a result of this pain, she is unable to exercise or do "the favorite activities that she used to enjoy." *Id.* It also makes her sensitive to extreme heat and cold. *Id.* When she has a "flare up" of this condition, the pain increases and she experiences "extreme fatigue" which increases her anxiety and often impacts her sleep. Doc. #23, PageID##242-247; Doc. #34, PageID#789. Her pain is exacerbated by the stress she experiences from her hearing loss as well as physical activity. Doc. #23, PageID##242-247. To lessen the pain, McGriff takes over the counter medications and, in the past, was prescribed physical therapy and a muscle relaxant. *Id.*, PageID##241-242. In 2017, a former principal at Beavercreek High School gave Plaintiff an "unofficial accommodation" for her fibromyalgia by grouping her "plan period," a no class time period, with her lunch period so that she was able to have a break in the middle of the day. *Id.*, PageId#243. In February 2017, she told her then-principal at the high school, Jeff Jones, that she was living with "chronic pain due to fibromyalgia" and that it "can drain my energy level." *Id.*, PageID##180 and 340.

In May 2016, Plaintiff learned from Jones that, in addition to teaching Spanish III and Spanish AP V, she would also be teaching two sections of French I for the 2016-2017 school year. *Id.*, PageID171-174. Although she proposed alternatives to her teaching French, including hiring a part-time teacher, Jones later told her he did not feel comfortable making her suggestion to Human

Resources. *Id.*, PageID##175-179 and 338. As a result, Plaintiff taught French I in the 2016-2017 school term in addition to Spanish.

In November 2016, the School District's levy failed. Doc. #25, PageID#409. Because of this, Defendant was required "to look closely at staffing decisions, restructuring of course offerings, and the scheduling process." Doc. #24, PageID#403. Additionally, online student registration for the 2017-2018 school year showed a decrease in registration for Spanish and an increase for French and German. Doc. #23, PageID##193 and 173. Prior to the start of the 2017-2018 school term, McGriff had meetings with Schweiterman, the Human Resources Director, to discuss teaching assignments, including her own. As the Director, he is responsible, along with the building principals, to help create the master schedule of classes and to make the staffing decisions. Doc. #26, PageID#431. He gave her copies of the licenses for the teachers in the World Language Department so that she would know what certifications everyone held. *Id.*, PageID#188. She later had a meeting with Schweiterman and Superintendent Otten, regarding staffing of the French and Spanish courses for the 2017-2018 school year, and proposed alternatives for staffing that did not require her to teach French. Doc. #25; Doc.#23, PageID#346. Her proposals, however, were not accepted. *Id.* In June 2017, Plaintiff was assigned to teach two levels of French I and four levels of French II at Beavercreek High School for the 2017-2018 school year. *Id.*, PageID##202 and 345. Prior to the 2017-2018 school term, she had never taught French II. Doc. #34, PageID#789. Plaintiff was told that her assignment to

6

teach French was based on the teaching licenses that she and other World
Language teachers held, the negotiated collective bargaining agreement with the
teacher's union and the course requests from the students. Doc. #23, PageID#411;
Doc. #25, PageID##409-411. Plaintiff told both Otten and Schweiterman that she
had a "big concern" that teaching all French, "after not having taught it with my
hearing impairment," would be "setting both students" and her "up for not being
successful." Doc. #23, PageID#210. Defendant told Plaintiff that if a Spanish
teacher were to leave the School District, they would look to her to fill that
position and would hire a French teacher. *Id.*, PageID#346. It also offered to
provide her with "support or professional development activities" to assist her.
*Id.* No Spanish teacher, however, left for the 2017-2018 school term and McGriff
declined an offer from the School District to use the language assistance program,
Rosetta Stone, in the summer months, since it was "not sufficient time to get back
those skills" that had lapsed over the years. *Id.*, PageID##200 and 202.

For the 2018-2019 school year, Plaintiff was assigned to teach three
sections of Spanish II, two sections of French I and one section of French II. Doc.
#25, PageI#412. The 2018-2019 school year also included an additional change for
her, since she was required to teach her morning classes at Beavercreek High
School and her afternoon classes at Ferguson Hall, located on the "same
campus," but in a separate building, approximately 695 feet away. Doc. #24,
PageID#405; Doc. #23, PageID#347. At a meeting held on June 7, 2018, she told
Otten that she did not understand why students did not leave Ferguson Hall to

come to the high school, as had been done in prior years, necessitating her travel to the freshman building. *Id.*, PageID#213-215.  Plaintiff was told that she was traveling, and not the students, because Defendant was trying to maximize instructional time and was concerned with "student safety." *Id.*, PageID#213. Although Defendant offered to transport her via golf cart from the high school to Ferguson Hall each day, she declined. Instead, at the end of her morning classes at the high school, McGriff would take her teaching materials, pack them in a box or "rolling suitcase," put them in her car and drive through the parking lot to get to Ferguson Hall. *Id.*, PageID#243-244.  The School District reserved a parking place for Plaintiff closest to her exit at Beavercreek High School and a parking space closest to Ferguson Hall. *Id.* PageID#405-406.  Defendant also offered to pay her mileage. *Id.*, PageID#406.  Doc. #24, PageID#405.   As required by the collective bargaining agreement, McGriff received the required uninterrupted 30-minute lunch and a planning period. *Id.*  She was also given extra time for travel. *Id.*  Although McGriff was pleased with being able to teach some Spanish again, continuing to teach French caused "extreme stress and anxiety," causing her to have "flare-ups" of fibromyalgia as well as depression. Doc. #23, PageID#216.

In November 2018, the School District levy failed a second time and reductions in employees were made for the 2019-2020 school term in the World Language Program.  One Spanish teacher was reassigned to another teaching area based on her licensure. *Id.*, PageID##412-413.  This reassignment, however, did not result in Defendant hiring a French teacher and permitting Plaintiff to fill

the Spanish teaching position, as Otten had represented to Plaintiff in his June 30, 2017, letter to her. Doc. #23, PageID#346. In the 2019-2020 school year, Plaintiff was assigned three sections of Spanish II, two sections of Spanish III and one section of French I for the 2019-2020 school year. Doc. #25, *Id.*, PageID#413. In the 2020-2021 school year, she taught all Spanish language courses.

Decisions concerning job assignments are made at Defendant's Central Office and McGriff has no evidence that anyone there was manipulating the job assignments to give better assignments to younger, non-disabled employees. Doc. #23, PageID#262. Additionally, although the past practice had been to have the least senior teacher travel to assist with school staffing needs, *Id*, PageID#255, she has no evidence that her traveling to teach at Ferguson Hall was done to make work more difficult for her and force her into retirement. Plaintiff's ratings and evaluations, as well as her benefits, title and pay, were unaffected by her being required to teach French and/or to travel to Ferguson Hall. *Id.,* PageID##219 and 248.

On August 7, 2017, Plaintiff filed a complaint of discrimination with the Ohio Civil Rights Commission ("OCRC"), asserting age and/or disability discrimination based on Defendant's requirement that she teach French. Following an investigation, the OCRC issued a Letter of Determination dated May 17, 2018, finding that it was "not probable" that an unlawful discriminatory practice had occurred. Doc. #23, PageID#397. On August 13, 2018, the United States Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of

Rights adopting the findings of the OCRC and advising McGriff of her right to file a civil action within 90 days of receipt. Doc. #7, PageID#28. She filed suit in this Court on November 9, 2018. Doc. #1.

## II. Motion for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the

10

[unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so

chooses, however, the Court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Legal Analysis

#### A. Introduction

Absent direct evidence, courts evaluate claims of age and disability discrimination using circumstantial and indirect evidence. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (internal citations omitted) ("The *McDonnell Douglas/Burdine* formula is the evidentiary formula applicable not only to claims brought under Title VII, but also [to] claims under the ADEA. . ."); *Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011) (applying *McDonnell Douglas* to an ADA claim). Therefore, Plaintiff's age and disability claims will be analyzed under the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. (1981).

Under the *McDonnell Douglas-Burdine* analysis, a plaintiff must first set forth a *prima facie* case of discrimination using circumstantial evidence. If the plaintiff sets forth the elements of a *prima facie* case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If the employer satisfies this burden of production, the plaintiff must then prove, by a preponderance of the evidence, that the reasons offered by

the employer were a pretext for discrimination. *Id.* The ultimate burden of persuasion of discrimination remains at all times with the plaintiff. *Burdine at 253.*

### B. Age Discrimination under the ADEA, First Cause of Action, Doc. #7, PageID#24.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a *prima facie* case of age discrimination under the ADEA, McGriff must show the following: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for and satisfactorily performed her job; and (4) she was treated less favorably than a similarly situated person outside the protected class." *Bradley v. Rhema-Northwest Operating LLC*, No. 16-2493, 2017 WL 4804419, at *4 (6th Cir. Oct. 3. 2017) (summary judgment dismissing claims in sex and age discrimination affirmed, since plaintiff failed to establish a *prima facie* claim of sex discrimination and, as to age discrimination, plaintiff failed to show proffered reasons were insufficient to motivate her termination).

Defendant argues that Plaintiff has no evidence supporting a claim of age discrimination, as she suffered no adverse employment actions, since she remained the department chair, had no increased duties and kept the same benefits and salary. Although she had not taught French in several years, she had

a permanent certificate to teach this language. Because the student interest in Spanish had decreased and that for French had increased, Defendant argues that it had a legitimate, non-discriminatory reason to have Plaintiff teach French as opposed to Spanish, even assuming, arguendo, that Plaintiff had established a *prima facie* case.

Although Plaintiff's Amended Complaint alleges a claim for age discrimination, her Response to Defendant's motion, Doc. #34, and her affidavit, Doc. 34, PageID##788-790, fail to argue a claim under the ADEA or address any of Defendant's arguments for its dismissal.[1] Thus, the Court finds Plaintiff has abandoned her age discrimination claim under the ADEA. Accordingly, because there is no genuine dispute of a material fact, Defendant is entitled to judgment as a matter of law as to Plaintiff's first cause of action, age discrimination.

------

[1] The Court has also reviewed Plaintiff's deposition, Doc. #23, and her assertion that, despite the past practice, the least senior teacher would travel to help with the School District needs, and yet she, the most senior teacher in the World Language Department, traveled to Ferguson to teach French. *Id.*, PageID#250. Plaintiff identified Chris Maybury and Nathan Risley as "less senior French teachers" who should have travelled instead of her to teach French at Ferguson. *Id.* Upon further questioning, however, Plaintiff admitted that Maybury and Risley each had full-time status at the middle schools teaching the Exploratory Language classes, and that this middle school language program would need to be eliminated, if they were to travel, so there could be "more flexibility on who was teaching where." *Id.*, PageID##251-252. Plaintiff also identified Katie Gilding and Michael Cardoza as "substantially younger and non-disabled employee[s]" who were permitted to teach Spanish, including upper level classes, and, thus, given more favorable teaching assignments than she. *Id.*, PageID#252-253. Plaintiff also admitted, however, that unlike her, neither of these teachers were certified in French, which was needed due to the increase in enrollment for this language. *Id.*, PageID#258. Based on the above, Plaintiff cannot show a "similarly situated person outside the protected class."

### C. Disability Discrimination under the ADA, Second Cause of Action, Doc. #7, PageID#25.

McGriff's second claim is for disability discrimination under the ADA. This Act was enacted to "eliminate[ ] discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In general, it prohibits qualifying employers from "discriminat [ing] against a qualified individual with a disability because of the disability of such individual in regard to ... hiring, advancement or discharge, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* claim for disability discrimination, a plaintiff must show the following: (1) she is disabled or her employer regarded her as disabled; (2) she is otherwise qualified to perform the essential functions of a position, with or without accommodation; and (3) she suffered an adverse employment action because of her disability. *Wallace v. Edward W. Sparrow Hospital Association*, 782 F. App'x 395, 404 (6th Cir. 2019). "Establishing a *prima facie* case is not onerous and is easily met." *Id.* (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 659 (6th Cir. 1999).

Defendant argues that McGriff has not established a *prima facie* case of disability discrimination, because she (1) did not suffer a materially adverse employment action and (2) has not shown that either her hearing loss or fibromyalgia are disabilities under the ADA. Finally, it argues that, even assuming a *prima facie* case, Plaintiff has no evidence that its reasons for requiring Plaintiff

15

to teach French instead of Spanish were a pretext. The Court will analyze each of

Defendant's arguments in the following sections.

### 1. Materially Adverse Employment Action

Defendant asserts that no "materially adverse" employment action under

the ADA occurred merely because McGriff was assigned to teach French as

opposed to Spanish.  It argues that this change in teaching involved no change in

her title, salary, benefits, hours of work or evaluations and, therefore, was not

materially adverse. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.

1996) (reassignment of nurse from supervisor to unit registered nurse was not

materially adverse since pay and benefits were same or greater, duties were not

materially modified and no evidence existed that loss of prestige occurred due to

title change).

In response, Plaintiff does not claim that she suffered a financial loss,

change in title, increase in hours or negative evaluations.  Instead, she asserts that

under *Hollins,* 188 F.3d at 662 (6th Cir. 1999), a Title VII discrimination and

retaliation case, "a materially adverse change" also includes "other indices that

might be unique to a particular situation." *Id.*  She contends that it is these "other

indices" that establish a "materially adverse change" in her "particular situation,"

since being required to teach French "significantly impacted her hearing

disability, [and] created stress, which[,] in turn[,] exacerbated her fibromyalgia."

She further asserts that, although Beavercreek High School had historically

honored the preferences of the more senior teachers and limited travel time

16

between the buildings for them, the past practice of not being required to travel was not followed as to her, even though there were two less senior French teachers that could have traveled to Ferguson Hall.

Although the Court in *Hollins* included the phrase "other indices that might be unique to a particular situation" as part of its definition of what could constitute a "materially adverse change," it also stated that the change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*   Plaintiff does not disagree that she was the only teacher in the department who was certified to teach both French and Spanish.  Based on her meetings with Schweiterman and Otten, she was also aware that there was a decrease in students registering for Spanish and an increase in registration for French.  Finally, although McGriff identified two less senior French teachers who were not traveling to Ferguson Hall to teach, these teachers were not teaching at the high school but were, instead, then teaching full time at the middle schools.

Although reassignments with the same pay and benefits "do not ordinarily constitute adverse employment decisions in employment discrimination claims," *Kocsis*, 97 F.3d at 885, factors such as new responsibilities and qualifications, whether the position is more labor intensive or is considered a "worse job by other employees" can be considered a demotion and constitute an adverse employment decision. *Keeton v. Flying J*, 429 F.3d 259, 264 (6th Cir. 2005).  In *Keeton*, the Court considered an employee's Title VII sexual harassment claim and whether a transfer, approximately 120 miles away from his home, was a "tangible

17

employment action." In citing *Hollins*, the Court of Appeals stated that "'other indices that might be unique to a particular situation'" can, however, "turn what would ordinarily not be an adverse employment action into one." *Keeton*, 429 F.3d at 265. Although the plaintiff in *Keeton* had agreed to relocate on his employment application and did not seek damages due to the transfer, the Sixth Circuit held that, a jury "could reasonably have found" his transfer, "which increased his commute to the extent that he needed to consider relocation," was an adverse employment action.

Plaintiff has asserted that having to teach French, and in particular French grammar, which she had never taught, with a 50% hearing disability and traveling to Ferguson Hall each day for half of a day while suffering from fibromyalgia, was an adverse employment action. The Court agrees and finds that a jury question exists as to whether a "materially adverse employment action" exists based on these "other indices" that "might be unique" to Plaintiff's "particular situation." *Hollins*, 188 F.3d at 662.

### 2. Hearing Loss and Fibromyalgia as Disabilities

Defendant also argues that no *prima facie* claim for disability discrimination exists, since Plaintiff has not shown that either her hearing loss or her fibromyalgia are disabilities under the ADA. "To qualify as disabled under the ADA, an individual must: (1) be actually disabled, i.e., suffer from 'a physical or mental impairment that substantially limits one or more major life activities,' (2) have 'a record of such an impairment,' or (3) be 'regarded as having such an

18

impairment.'" *Barlia v. MWI Veterinary Supply, Inc.,* 721 F. App'x 439, 445 (6th Cir. 2018) (citing 42 U.S.C. § 12102(1)).[2]  In this case, the School District asserts that McGriff fails the first test of qualifying as disabled because she is not "actually disabled," since her hearing loss and fibromyalgia do not "substantially limit one or more" of her "major life activities" as required by 42 U.S.C. § 12102(2).

The "[r]ules of construction regarding the definition of disability" under the ADA state that it "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter," and the phrase "'substantially limits,' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"("ADAAA"); *Barlia*, 721 F. App'x at 445 ("Congress amended the ADA in 2008 to state that the

---

[2] Plaintiff's Response asserts only a claim of disability under the first definition: that she was "actually disabled" because she suffered from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Although there are no facts before the Court which show that Plaintiff satisfies the second ADA definition, that there be a "a record of such an impairment," 42 U.S.C. § 12102(1)(B), *Neely v. Benchmark Family Services*, 640 Fed. Appx 429, 435 (6th Cir.2016) (uncorroborated statements to doctors or preliminary impressions are insufficient to establish "a history of ... a mental or physical impairment that substantially limits one or more major life activities), there are facts showing that a genuine issue of material fact exists as to whether the third definition of disability, that Defendant "regarded" Plaintiff "as having such an impairment," exists.  § 12102(1)(C). *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) ("[T]o state the threshold condition of a 'regarded as' ADA claim, an employee need only show that their employer believed that they had a 'physical or mental impairment,' as the term is defined in federal regulations.") Here, Defendant's offer to accommodate Plaintiff's fibromyalgia by offering to transport her via golf cart to Ferguson Hall and reserving parking spaces there and at the high school indicate it regarded her as having a physical disability from this condition. Accordingly, even though not argued by Plaintiff, the Court finds that a genuine issue of material fact exists as to whether Plaintiff satisfies the third definition of disability, as least as it pertains to her fibromyalgia condition.

term [disability] should be construed 'in favor of broad coverage ..., to the maximum extent permitted by the [ADA's] terms.'" (quoting 42 U.S.C. § 12102(4)(A))).[3] Additionally, "the term 'major' shall not be interpreted strictly to create a demanding standard." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018) (quoting 29 C.F.R. § 1630.2(i)(2))."   The statute further states that "an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability" and an impairment can be a disability even if "episodic or in remission" if, when it is active, it "substantially limit[s] a major life activity." 42 U.S.C. § 12102(4)(D).

### a. Hearing Loss as a Disability under the ADA

With respect to Plaintiff's hearing loss, the School District disputes that this is a "substantial limitation," arguing that no disability exists under the ADA, because "she can fully compensate for her hearing deficiency with the use of hearing aids." Doc. #26, PageID#429.  The ADA, however, defines disability as, among other things, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual" stating that "hearing" is a "major life activity." 42 U.S.C. § 12102(2)(A).  Moreover, the statute further states that hearing aids are not to be considered when determining whether an

---

[3] In passing the ADA Amendment Acts of 2008 ("ADAAA), the Congressional "Findings and Purpose" expressly rejected the "inappropriately high" standards for interpreting the term "substantially limits" articulated by the Supreme Court in *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Pub.L. 110–315.

impairment "substantially limits a major life activity." 42 U.S.C. § 12102(4)(E)(i) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--(I) . . . hearing aids and cochlear implants or other implantable hearing devices.")

Plaintiff's deposition and affidavit state that, even with hearing aids, she has difficulty hearing someone talking to her unless she is directly facing them and she cannot hear a person talking to her directly if there is background noise such as a copier. She also has difficulty when she is using the telephone and, at times, needs to use closed captions when watching videos or in virtual meetings. Based on this testimony, as well as the statutory language of the ADA, and its amendments, a jury question exists as to whether Plaintiff has established a *prima facie* case that she has a physical impairment that substantially limits one or more major life activities.[4]

---

[4] Plaintiff has identified Lou Ann Wasch, MS, F-AAA, as one of her experts and has provided a signed report letter of Lynn Carpenter, AuD, F-AAA, Director of Audiology, Ms. Wasch's employer/supervisor. The report letter states, among other things, when Plaintiff developed her hearing loss, the extent of the loss, that it is permanent, that she wears two hearing aids and that she would benefit from continuing to teach Spanish as a foreign language. Doc. #29, PageID#664. Defendant has filed a motion to exclude Ms. Wasch's testimony. Doc. #29. Aside from the fact there is no dispute concerning Plaintiff's hearing loss, the Court will not consider this matter, given that it is the subject of a pending motion to exclude.

### b. Fibromyalgia as a Disability under the ADA

McGriff describes her fibromyalgia as a condition that causes her chronic pain on a daily basis "but to [varying] degrees" and that it sometimes "flare[s]-up." Her deposition and affidavit state that the pain drains her energy level which results in fatigue and keeps her from exercising at the end of the day. She also states that the pain increases her anxiety affecting her sleep and, because it also affects nerve endings, she is unable to tolerate extreme heat and cold and "it has caused sciatica issues." Plaintiff stated that she had an "unofficial accommodation" for this condition when a former principal grouped her plan period and lunch period together so that she could "recharge her battery" and rest.[5]

Defendant asserts that Plaintiff's fibromyalgia is not a disability under the ADA because she fails (1) to provide any expert testimony about this alleged diagnosis and whether it is a disability; (2) to show that it impairs any of her major life activities; and (3) to address whether her "supervisors at Beavercreek were aware of her fibromyalgia." Doc. #36, PageID#798.

As noted earlier in this Decision and Entry, Plaintiff's Response asserts only a claim of disability under the first definition of 42 U.S.C. § 12102(1)(A): that she

---

[5] McGriff has not argued that the School District failed to accommodate her fibromyalgia. In fact, it did accommodate her as far as providing her closer parking spaces and an offer of mileage reimbursement after she rejected the offer to be driven in a golf cart from the high school to Ferguson Hall.

was "actually disabled" because her fibromyalgia is a "a physical or mental impairment that substantially limits one or more major life activities."[6] To establish a *prima facie* case of disability and show that she is "actually disabled" under this first definition of disability, McGriff is not required to present expert testimony diagnosing her fibromyalgia.[7] *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019) (plaintiff need not show that her disability renders her unable to work and need not tell her employer about her specific diagnosis). Instead, McGriff need only show that her impairment substantially limits one or more of her "major life activities." Although Defendant argues that Plaintiff failed to identify a major life activity impaired by her fibromyalgia and only testified to being unable to exercise and participate in her favorite hobbies, her testimony also included difficulty sleeping and concentrating resulting in fatigue and anxiety. These symptoms required her to rest in the middle of her teaching day. She has also stated that fibromyalgia affects her nerve endings, ability to withstand extreme heat and cold and that it causes sciatica. She testified that the fatigue was exacerbated by traveling to Ferguson Hall.

---

[6] *See*, *supra*, text accompanying n. 2.

[7] In determining whether an impairment "substantially limits" a major life activity, the ADA permits a comparison of the individual's performance with the general population. 42 U.S.C. §1630.2(v). However, "[T]he comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis." *Id*. Moreover, a plaintiff can always testify as to her physical condition, her aches, pain, fatigue, etc., without diagnosing herself with a particular ailment, i.e., fibromyalgia.

The definition of a major life activity includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and <u>working</u>." 42 U.S.C. § 12102(2)(A) (emphasis added).[8] Additionally, in 2008, the term "major life activity was amended to include the operation of a major bodily function," including, but not limited to include, "neurological functions." 42 U.S.C. § 12102(2)(B).

Based on this testimony, genuine issues of material fact exist as to whether Plaintiff's fibromyalgia substantially limits one or more of her major life activities and/or major bodily functions. In evaluating "substantial limitations on life activities," the ADA regulations use an "average person in the general population." 29 C.F.R. § 1630.2(j)(1).[9]

---

[8] Fibromyalgia has also been recognized in Social Security cases as a "severe impairment" with no objective tests. *Kalmbach v. Commissioner of Social Security*, 409 Fed. Appx. 852 (6th Cir. 2011) (recognizing fibromyalgia in social security cases as a "severe impairment" and that patients present "no objectively alarming signs."); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988) (per curiam)(noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia).

[9] (j) Substantially limits—

*   *   *

(ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

Defendant's final argument that Plaintiff's alleged fibromyalgia is not a disability under the ADA is that she has not shown that her "supervisors at Beavercreek were aware of her fibromyalgia." However, as noted earlier in this Decision and Entry, although Plaintiff did not argue a claim of disability under § 12102(1)(3), a genuine issue of material fact exists as to whether Defendant "regarded" her as having such an impairment. Plaintiff had told Schweiterman about her condition in the 2018-2019 school year and explained to him the stress associated with the physical moving of her classroom. Additionally, Otten's affidavit explains the accommodations offered to Plaintiff in her travel from the high school to Ferguson Hall which included someone driving her in a golf cart and later reserving parking spaces at the high school and Ferguson Hall.

Based on the above testimony, the language of the statute and an evaluation of a "substantial limitation" using an "average person in the general population" standard and, further recognizing that "for cases on the margin, the Act includes a 'rule of construction' that tips in favor of coverage," *Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020) (quoting 42 U.S.C. § 12102(4)(A)), the Court finds that a jury question exists as to whether Plaintiff has established a *prima facie* case that her fibromyalgia substantially limits one or more "major life activities" or "major bodily functions" under the ADA and whether Defendant regarded her as having such an impairment.

25

### 3. Plaintiff Has Not Shown That Defendant's Proffered Legitimate, Nondiscriminatory Reason for Assigning Plaintiff to Teach French Classes Was Pretextual

To establish pretext, a plaintiff must show either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate her discharge; or (3) that the proffered reasons were insufficient to motivate discharge. *Wallace*, 782 F. App'x at 404 (citing *Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 511 (6th Cir. 2004); *see also*, *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (in order to successfully challenge an employer's credibility of proffered explanations and establish pretext, a plaintiff must introduce additional evidence of discrimination and not simply rely on his *prima facie* case). Because Plaintiff was not discharged, Plaintiff must show that Defendant's "proffered reasons" for her reassignment to teach French and to travel 695 feet to Ferguson Hall were pretextual.

The School District advised Plaintiff as its legitimate, non-discriminatory reasons for its actions: that her reassignment to teach French, instead of her preferred Spanish language courses, was based on the teaching licenses that she and other World Language teachers held, the negotiated collective bargaining agreement with the teacher's union and the course requests from the students. Both the Schweiterman and Otten affidavits also reference the failed school levies that impacted the changes affecting her. Rather than contest these reasons, McGriff states in her affidavit that "I understand that due to levy failures in the

2016-2019 time period[,] it was necessary for Defendant to make some changes in staffing assignments for teachers who taught world languages such as German, French and Spanish." Doc.#34, PageID#789. Although she also states in her affidavit that she "believes these changes could have been made without exacerbating my hearing disability and fibromyalgia disability," *Id.*, she has no evidence that anyone was manipulating the job assignments to give better assignments to younger, non-disabled employees.[10] In essence, Plaintiff has provided no evidence or argument to refute Defendant's proffered legitimate, nondiscriminatory reasons for its actions.

Based on the above, Plaintiff has failed to show that Defendant's proffered reasons for Plaintiff's reassignment to teach French I and French II during the 2016-2017,[11] 2017-2018 and 2018-2019 school years and/or its requirement that she travel from Beavercreek High School to Ferguson Hall to teach French in the 2018-2019 school year were pretextual. Accordingly, there exists no genuine issue of material fact on this issue.

---

[10] Although Plaintiff testified in her deposition that Jeff Jones, a former principal, had wanted to "frustrate her into resigning as department chair," he had left the high school for the 2017-2018 school year, the first school year that she was teaching only French. Additionally, Schweiterman, as the Director of Human Resources, made the staffing decisions "in conjunction with the building principals." There is no evidence that Jones was the decision-maker and responsible for assigning Plaintiff to teach French or had any influence or attempted to influence the ultimate decision-maker.

[11] Plaintiff does not specify either in her Amended Complaint or in her Response if the 2016-2017 school year, when she taught two classes of French I, are included in her claims of age and disability discrimination.

For the above-stated reasons, given that the Court finds that there is no genuine issue of material fact on the issue of pretext, Defendant is entitled to judgment as a matter of law.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. #26, is SUSTAINED.

Judgment shall be entered in favor of Defendant, the Beavercreek City School District, and against Plaintiff, Bonnie M. McGriff.

The captioned case is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: June 10, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

28